**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1287-WJM-KMT

BRIAN WITLIN,

    Plaintiff,

v.

JIBBITZ LLC, and
CROCS, INC.,

    Defendants.

---

## ORDER DENYING CROCS INC.'S MOTION TO DISMISS

---

Plaintiff Brian Witlin ("Plaintiff") brings this action against Defendants Jibbitz, LLC and Crocs Inc. ("Crocs") for breach of contract and the covenant of good faith and fair dealing. (Compl. (ECF No. 1).) This action arises out of an asset purchase agreement executed by Plaintiff's former company, GoLaces, LLC, and Jibbitz. (*Id.* ¶ 1.)

Before the Court is Defendant Crocs's Motion to Dismiss for Failure to State a Claim ("Motion"). (ECF No. 11.) For the reasons set forth below, the Motion is denied.

### I. LEGAL STANDARD

The Motion is brought under Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to move for dismissal of a claim for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the

complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II.  FACTUAL BACKGROUND

Plaintiff is the co-inventor of the inventions described in U.S. Patent 8,590,121 (the "121 Patent"), which covers elastomeric fasteners that can be used in place of shoelaces. (Compl. ¶ 11.) In May 2007, Plaintiff and his co-inventor formed GoLaces, LLC to market their invention. (*Id.* ¶ 12.) In August 2007, Jibbitz approached GoLaces and expressed an interest in acquiring its product line and rights to manufacture the product line. (*Id.* ¶ 13.)

In February 2008, GoLaces and Jibbitz entered into a written asset purchase agreement (the "Agreement"). (*Id.* ¶ 14.) Amongst other terms, the Agreement required Jibbitz to "devote such resources as shall be reasonably required to diligently pursue the prosecution of" the '121 Patent. (*Id.* ¶ 15.) If the '121 Patent was approved in substantially the same form and substance it had previously been submitted to the patent office, Jibbitz agreed to pay GoLaces an additional $250,000. (*Id.*)

Plaintiff[1] alleges that Jibbitz failed to devote adequate resources to approval of the '121 Patent, and that this resulted in GoLaces hiring its own attorneys to ensure that the patent was property prosecuted.  (*Id.* ¶ 17.)  GoLaces alleges that it had to expend more than $40,000 in legal fees, and suffered more than $50,000 in lost opportunity costs from the delay in approval of the '121 Patent.  (*Id.* ¶ 18.)  Plaintiff alleges that the '121 Patent, as approved by the Patent office, was sufficiently similar so as to trigger the additional $250,000 payment under the Agreement.  (*Id.* ¶ 20.)

On these facts, Plaintiff brings claims for breach of contract and breach of the covenant of the duty of good faith and fair dealing against Jibbitz and Crocs.  (*Id.* pp. 7-11.)  Plaintiff asserts his claims against Jibbitz on the basis that it is a signatory to the Agreement.  (*Id.*)  As to Crocs, Plaintiff alleges that it is "jointly and severally liable with Jibbitz" through an alter ego theory.  (*Id.* ¶¶ 6-8, 27.)

### III.  ANALYSIS

Crocs moves to dismiss the claims brought against it on the grounds that it is not a party to the Agreement, and therefore could not have breached the Agreement.  (ECF No. 11 at 1.)  Plaintiff admits that Crocs is not a party to the Agreement, but alleges that it should remain a defendant in this case because Jibbitz is an alter ego of Crocs.  (ECF No. 26 at 1.)

In determining whether a corporate parent is an alter ego of its subsidiary, the Court considers whether the following non-exclusive factors apply:  (1) parent corporation owns all or majority of subsidiary's capital stock; (2) parent and subsidiary

---

[1] After the Agreement was executed, GoLaces changed its name and then dissolved.  (*Id.* ¶ 1.)  The right to pursue claims related to the Agreement were transferred to Plaintiff.  (*Id.*)

have common directors or officers; (3) parent corporation finances subsidiary; (4) parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) subsidiary has grossly inadequate capital; (6) parent corporation pays subsidiary's salaries, expenses or losses; (7) subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in parent corporation's papers, subsidiary is referred to as such or as a department or division; (9) directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) formal legal requirements of subsidiary as separate and independent corporation are not observed. *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993).

With regard to the alter ego theory, Plaintiff's Complaint states:

> 6. On information and belief, Jibbitz is, and at all times herein mentioned was, controlled, dominated and operated by Crocs as its individual business and alter ego, in that, among other things, the activities and business of Jibbitz have been carried out as an integral part of the business of Crocs, including by the incorporation of the financial results of Jibbitz's business activities in Crocs' SEC filings, and by the commingling of the funds on the two entities under the control of and for the benefit of Crocs, giving rise to a unity of interest and ownership between Jibbitz and Crocs such that any separateness had and has in reality ceased to exist.
>
> 7. On information and belief Crocs has appropriated to itself the business and other assets of Jibbitz, which is thinly capitalized and is a mere shell, thereby jeopardizing the ability of Jibbitz to satisfy its payment obligations, in particular its payment obligations to GoLaces referred to herein. Crocs has thereby inhibited and/or prevented Jibbitz paying its creditors,

>           including GoLaces, thereby actually or potentially
>           defeating rightful claims against Jibbitz.
>
>    8.     In light of the allegations set out in paragraph 6 and 7,
>           above, adherence to the fiction of the separate
>           existence of Jibbitz as an entity distinct from Crocs
>           would permit an abuse of the corporate privilege, and
>           would sanction fraud and promote injustice.
>           Accordingly, equity requires that the corporate form of
>           Jibbitz should be disregarded and . . . the corporate
>           veil pierced, and that Crocs should be held jointly and
>           severally liable for all obligations of Jibbitz to GoLaces
>           under the Asset Purchase Agreement, and
>           consequently also liable to Witlin as the successor in
>           interest to GoLaces.

(Compl. ¶¶ 6-8.)

Crocs contends that the paragraphs above consist almost entirely of conclusory allegations that are insufficient to meet Plaintiff's pleading burden. (ECF No. 11 at 5.) The Court disagrees. While Plaintiff could likely allege more specific facts now that some discovery has occurred, the Court does not find that these allegations are simply legal conclusions that can be ignored on a motion to dismiss. *See F.D.I.C. v. First Interstate Bank of Denver*, 937 F. Supp. 1461 (D. Colo. 1996) (accepting as true the factual allegation that the corporate parent "controlled" the activities of the subsidiary and played a "pivotal role" in certain business decisions). Plaintiff specifically alleges that Crocs reports Jibbitz's business activities in its SEC filings, that Jibbitz's business and activities are an integral part of Crocs's business, and the Crocs controls and dominates Jibbitz. (Compl. ¶ 6.) Plaintiff also alleges that Jibbitz is thinly capitalized by Crocs, and that this inhibits Jibbitz's ability to pay its creditors. (Compl. ¶ 7.) The Court must take these allegations as true, and given that alter ego is an equitable remedy designed to ensure that a party is afforded an adequate legal remedy, the Court finds

these allegations significant for purposes of the instant Motion.

In sum, the Court finds that the factual allegations regarding alter ego in Plaintiff's Complaint are minimally sufficient to state a claim against Crocs for purposes of Rule 12(b)(6).  Should this issue arise again in the context of a summary judgment motion, Plaintiff will certainly be required to produce significantly more evidence on his alter ego theory than is present in the Complaint.  However, the Court believes that this issue is better addressed after Plaintiff has been afforded the time to conduct discovery, and explore his alter ego theory.  Accordingly, Crocs's Motion to Dismiss is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant Crocs, Inc.'s Motion to Dismiss for Failure to State a Claim (ECF No. 11) is DENIED.

Dated this 12th day of February, 2015.

BY THE COURT:

William J. Martinez
United States District Judge